UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

LAURAINE B. SINGLETON,
   Plaintiff,

vs.                                        No. 07-1254

JODY KING, et.al.,
   Defendants

## CASE MANAGEMENT ORDER

This cause is before the court for consideration of Defendants Sergeant Clauson and Correctional Officers Denise Carter, Jody King and Torri Burnette's motions for summary judgement. [d/e 53, 54, 55, 56]

### I. BACKGROUND

The pro se plaintiff filed this complaint pursuant to 42 U.S.C. 1983 claiming that her constitutional rights were violated at the Peoria County Jail. On April 9, 2008, the court conducted a merit review of the plaintiff's complaint and found that the plaintiff has stated the following claims:

> 1) Defendants Sergeant Clauson; Correctional Officers Denise Carter, Jody King, and Torri Burnette[1] violated the plaintiff's constitutional rights when they were deliberately indifferent to the plaintiff's serious medical condition.
> 2) Defendant King violated the plaintiff's constitutional rights when she used excessive force against the plaintiff and injured her finger.
> 3) Defendants King and Clausen violated the plaintiff's constitutional rights when they forced her to live in unsanitary and unhealthy living conditions.
> 4) Defendant King violated the plaintiff's First and Fourteenth Amendment rights when she unreasonably interfered with the plaintiff's phone calls to her attorney.
> 5) Defendant King violated the plaintiff's constitutional rights when he improperly denied visitation.

The court noted that while the Eighth Amendment protects prisoners from deliberate indifference to a serious medical need and from injury, the Due Process Clause of the Fourteenth Amendment extends that right to pre-trial detainees. *Estelle v Gamble,* 429 U.S. 97 (1976); *Palmer v Marion County,* 327 F.3d. 588, 592 (7th Cir. 2003). It was unclear whether the plaintiff was a pretrial detainee or whether she was serving a sentence at the time of the allegations. The

---

[1]The court granted the motion to dismiss Defendant Donna Bond from this claim for lack of service.

parties have now clarified that the plaintiff was a pretrial detainee in the Peoria County Jail at the time of her allegations.

## II. FACTS

The plaintiff says she was diagnosed with insulin-dependant diabetes in 1993. (Def. Memo, Ex. A, Plaintiff Depo, p. 13)

In July, 2006, Defendant Jody King was employed as a Correctional Officer at the Peoria County Jail and was assigned to the K pod where the plaintiff was housed. (Def. Memo, King Aff, p. 1)  King says there were multiple incidents with inmates in this area on July 30, 2006, and therefore she wrote an incident report.[2]

King says she included the plaintiff in her incident report because the plaintiff was trying to trade her milk with Inmate Smith in exchange for Inmate Smith's Kool-aid.    Defendants King and Closen state that the plaintiff was on a diabetic diet and was not suppose to have sweets. (Def. Memo, King Aff, p. 2) (Def. Memo, Closen Aff, p. 2).  The defendants have provided a copy of the order stating that the plaintiff was on a diabetic diet. *See* Closen Memo, Att. 4)   Therefore, it was King's understanding that the plaintiff was suppose to have milk instead of sugary Kool-aid.  (Def. Memo, King Aff, p. 2)  King informed the plaintiff of this, but the plaintiff said she did not want her milk.

Also on July 30, 2006, King says Sergeant Closen was the sergeant on duty and determined that the plaintiff should be moved to a the different cell on J pod. (  (Def. Memo, King Aff, p. 2)  Sergeant Closen planned to evaluate the plaintiff's commissary slips to see if her diabetic diet allowed the items she was ordering.   (Def. Memo, King Aff, p. 3)  King says:

> [t]o the best of my recollection, (the plaintiff) was put in a special cell and
> her commissary slips were to be evaluated in order to protect her from her
> own actions, since she was getting food from others that she was not
> suppose to have as a diabetic.   (Def. Memo, King Aff, p. 3)

Sergeant Closen confirms that these were the reasons for moving the plaintiff on July 30, 2009. (Def. Memo, Closen Aff, p. 2) .

King says she has no recollection that the new cell the plaintiff was moved to was unsanitary or hot.  In addition, both King and Closen say they do not recall receiving any

---

[2]King says initially she put the incorrect date of "July 31" on her report, but she did put the correct day of the week, "Sunday."  (Def. Memo, King Aff, p. 1)   King has provided a copy of this report and has also included a copy of a log officers keep to confirm that the events reported occurred on July 30, 2006.  (Def. Memo, King Aff, p. 1-2, Att. 1)

grievances from the plaintiff concerning the condition of her J pod cell. Defendant King took the plaintiff to her new cell, but Defendant Closen did not. (Def. Memo, Ex. A, Plaintiff Depo, p. 55) King says the cells have two steel doors which are kept shut for safety reasons, but the jail is air-conditioned. (Def. Memo, King Aff, p. 3) Officers do a visual check of these cells every 15 to 30 minutes. King says the J pod cells are larger that the regular cells. In addition, inmates are allowed cleaning supplies, but generally only in the morning after a head count is taken.

The plaintiff was in the J pod cell for less than 24 hours. Nonetheless, she states in her deposition that she began to feel sick during the evening due to the heat. She complained and was taken to medical where she was allowed too cool off and checks were done on her diabetic condition. (Def. Memo, Ex. A, Plaintiff Depo, p. 49-50)

On July 31, 2006, King says she wrote another incident report about an altercation between the plaintiff and Inmate Smith while they were in a medical holding cell. Two inmates reported that the plaintiff had scratched Inmate Smith's arm when she claimed that Inmate Smith had "snitched" on her the day before regarding her attempts to get Kool-aid. (Def. Memo, King Aff, p. 4) The plaintiff received a disciplinary ticket as a result of the incident.

King says the plaintiff was then placed in a detox cell for medical observation of her blood sugar levels. King says the detox cells are routinely used to house inmates for medical observation when there are also safety concerns associated with that inmate. (Def. Memo, King Aff, p. 4) In the plaintiff's case, she had just been accused of assaulting another inmate.

King says inmates in detox cells are offered showers during the third shift and are provided fresh linens twice a week. Jail staff also do visual checks every 15 to 30 minutes. These inmates are not allowed cleaning supplies, but the cells are cleaned on a regular basis by jail staff. Again, King and Closen say they have no recollection of any unsanitary conditions in the plaintiff's detox cell, nor receiving any grievances on this issue. (Def. Memo, King Aff, p. 5). (Def. Memo, Closen Aff, p. 4).

The plaintiff stated in her complaint that her incarceration in the J pod cell and the detox cell lead to health problems such as spider bites and infection. However, the plaintiff admits she had complained of these problems prior to her placement in either cell. (Def. Memo, Ex. A, Plaintiff Depo, p. 62, Ex. 6)

The disciplinary hearing on the medical unit incident was held on August 3, 2006. King says the plaintiff was able to attend and testified on her own behalf. Sergeant Closen found the plaintiff guilty of violating jail rules and she received seven days in lock down. (Def. Memo, King Aff, p. 5). (Def. Memo, Closen Aff, p. 4-5) .

The plaintiff served her time on lock down in the K pod where Defendant King works. King says inmates on lock down are allowed to make phone calls to whomever they wish on Tuesdays. On other days of the week, inmates on lock down are only allowed to call their

attorneys. (Def. Memo, King Aff, p. 5). Therefore, per jail policy, if an inmate wishes to make a call on a day other than Tuesday, jail staff must verify that the call is placed to an attorney.

King says she has no recollection of any incident with the plaintiff on August 7, 2006. However, King says she checked the log that is kept and it shows that she took the plaintiff to make a call to her attorney at 12:14 p.m. on this day. (Def. Memo, King Aff, p. 6)  In her deposition, the plaintiff says King took the phone away from her and questioned the attorney's secretary as to who was involved in the call. (Def. Memo, Ex. A, Plaintiff Depo, p. 71)  The plaintiff also admits that she was able to continue talking on the phone after King left. (Def. Memo, Ex. A, Plaintiff Depo, p. 74)  In addition, the plaintiff says she was able to talk to her attorney or his secretary before and after August 7, 2006. (Def. Memo, Ex. A, Plaintiff Depo, p. 75).

King says inmates are allowed regular visits that may be no longer than 20 minutes, unless the inmate is meeting with an attorney.  King says correctional officers have no authority to cut visits short unless told to do so by a sergeant.  King says while she has no recollection of any specific interaction with the plaintiff on July 13, 2006, the log shows she took the plaintiff to Booth 23 for a visit at 10:25.  She returned to her cell at 11:05. (Def. Memo, King Aff, p. 6).  In her deposition, the plaintiff says she met with DCFS counselors on this day. (Def. Memo, Ex. A, Plaintiff Depo, p. 89)  In addition, the plaintiff says she was able to see the counselors again after this visit. (Def. Memo, Ex. A, Plaintiff Depo, p. 91)

In her complaint, the plaintiff alleges that Defendant King prevented a visit from a Women's Strength Counselor.  King says when visitors come to the jail, the are required to sign in at the reception desk.  The desk worker then calls the sergeant on duty to let them know a visitor is there to see an inmate.  The sergeant will then notify an officer that an inmate needs to be brought out for a visit.  However, King says correctional officer do not work the reception desk and she has never personally worked the desk.  Therefore, King say she has no recollection of any personal encounter with Women's Strength Counselor, Deborah Hyde. (Def. Memo, King Aff, p. 8)  In her deposition, the plaintiff says she is basing her claim on a greeting card she got from Hyde saying that she had been denied visitation. (Def. Memo, Ex. A, Plaintiff Depo, p. 96). The plaintiff has no personal knowledge of the events and says she no longer has the card.

King says she does recall an incident involving an injury to the plaintiff's finger in August of 2006.  King says the plaintiff's finger looked red and painful and was infected with what King thought may have been an ingrown fingernail.   King says she escorted the plaintiff to the medical unit.  King says the nurse stuck a needle into the infected area to try and draw out blood and puss and instructed the plaintiff to squeeze the area at the same time in order to assist the process.   The plaintiff was not squeezing hard enough and King says she offered to help. King says she put on medical gloves and the plaintiff gave her the infected finger.  King says she was able to help remove the "remaining puss and blood." (Def. Memo, King Aff, p. 7).  King says "[a]t no time did (the plaintiff's) finger 'burst open."(Def. Memo, King Aff, p. 7).

4

The plaintiff in her deposition says she does not recall writing a grievance about this incident. (Def. Memo, Ex. A, Plaintiff Depo, p. 83). In response to discovery, the plaintiff says Nurse Pam was a witness to the assault. (Def. Memo, Ex. D.) In her deposition, the plaintiff says the incident occurred in a hallway with no witnesses. (Def. Memo, Ex. A, Plaintiff Depo, p. 79) The plaintiff says she cannot remember the month, day or time the incident occurred.

Denise Carter says she is a correctional officer at the Peoria County Jail. At the times relevant to the plaintiff's complaint, Carter says she worked the second shift from 1:00 p.m. to 10:00 p.m. (Def. Memo, Carter Aff, p. 1) Carter says on May 26, 2006, she was working in the J pod where the plaintiff was housed. At approximately 4:00 p.m., she escorted the plaintiff to medical for her regularly scheduled blood sugar check. Carter says it was also her understanding that the nurse wanted to see the plaintiff again at some point after dinner. Carter says dinner is served from 5:00 p.m. to 5:50 p.m. (Def. Memo, Carter Aff, p. 1) The dinner break for correctional officers is 6:00 to 6:30 p.m.

Carter says at 7:45, the plaintiff began banging on her cell door and told Carter she had forgotten to take her to medical. Carter says she called medical to make sure a nurse was ready to see the plaintiff, and then took her to medical. The nurse then stated she wanted to see the plaintiff at 10:00, so Carter passed the information on to the next officer on duty. (Def. Memo, Carter Aff, p. 2) Carter says the plaintiff, at no point, demonstrated any signs of distress, nor did she pass out.

Closen says she did not work on May 27, 2006, when the plaintiff claims she submitted her grievance about the incident she alleges happened with Officer Carter. Furthermore, Closen says she has no recollection of ever seeing any grievance submitted by the plaintiff regarding the issues in her complaint. Closen says there were at least six different sergeants that worked in the Peoria County Jail during the relevant time period. Three worked each day. Generally, when an inmate grievance is addressed simply to "sergeant," it is given to the sergeant on duty that day. (Def. Memo, Closen Aff, p. 5).

Torra'e Burnette was a correctional officer at the times relevant to the plaintiff's complaint and was assigned to the K pod unit. Around lunchtime on August 6, 2006, the plaintiff told Burnett that she needed to go to medical for a blood sugar check. (Def. Memo, Ex. A, p. 31) Prior to taking any inmate to medical, Burnette says she must radio ahead to see if a nurse or doctor has authorized the visit at that time. Burnette says she called medical, but the nurse refused to see the plaintiff during the plaintiff's lunch time because she was not scheduled for insulin until later in the day at 4:00 p.m. (Def. Memo, Burnett Aff., p. 11).

In her deposition, the plaintiff admits that her diabetes has improved.(Def. Memo, Ex. A, Plaintiff Depo, p. 1092-103) The plaintiff now receives two shots of insulin a day instead of three. (Def. Memo, Ex. A, Plaintiff Depo, p. 103)

Steven Smith says he is the Peoria County Jail Superintendent. Smith says there is a

grievance/complaint procedure available to all inmates or detainees at the jail. (Def. Memo, Smith Aff, p. 1) Smith has provided a copy of the Inmate Rule which pertained to these procedures when the plaintiff was housed at the jail. Inmates are directed to fill out an"Inmate Request Form." (Def. Memo, Smith Aff, p. 1. Att. 1) Responses are to be provided within five days and if an inmate is still not satisfied, they may ask for the Correctional Superintendent to review the decision. (Def. Memo, Smith Aff, p. 1, Att. I)

Smith says he has searched the records of the Peoria County Jail and has found no Inmate Request Forms that were appealed to him as required. The court notes that it previously addressed the issue of exhaustion of administrative remedies. *See* March 18, 2009 Case Management Order. The plaintiff admitted she had not appeal any decisions, but stated that she had not received any initial response to her complaints. Neither side provided any documentation, and the court stated that based on the record before the court, it could not determine if the plaintiff had fully exhausted her available administrative remedies. No further documentation was provided at that time.

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy,

speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV.  ANALYSIS

### A. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

Each defendant argues that the plaintiff has failed to demonstrate that they were deliberately indifferent to a serious medical condition.   In her complaint, the plaintiff alleged that the defendants either failed to bring her insulin, failed to provide proper food to maintain her blood sugar levels, failed to follow doctor's orders or denied her treatment.

Because the plaintiff was a pretrial detainee, her §1983 claim falls under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment. *Butera v. Cottey,* 285 F.3d 6901, 605 (7th Cir. 2002).  Nonetheless, the claim is still "analyzed under the Eighth Amendment test." *Henderson v. Sheahan,* 196 F.3d 839, 844 n.2 (7th Cir. 1999).  Therefore, the plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated her constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id*.

The second prong of the test requires the plaintiff to show that the defendants acted with deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42)  Inadequate medical treatment due to negligence or even gross negligence does not support a constitutional violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987).  In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).  Deliberate indifference is "something approaching a total unconcern for [the plaintiffs'] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v Lane,* 959 F.2d 673, 677 (7th Cir. 1992).

[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha* ,151 F.Supp.2d 938, 945 (N.D. Ill.  2001) *citing Ford,* 2001 WL 456427 at 6.   However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

The plaintiff was clearly advised that when responding to a summary judgement motion, she could:

> not simply rely on the allegations made in your complaint. ...If
> you do not submit affidavits or other documentary evidence
> contradicting the defendants' assertions, the defendants' statement
> of facts will be accepted as true... [d/e 57]

Nonetheless, the plaintiff has provided very little evidence in response to any of the defendants' claims. She has provided a one page affidavit which simply says the allegations in her complaint are true. [d/e 65] This is not sufficient.

Consequently, the plaintiff has provided absolutely no evidence that any defendant was deliberately indifferent to her medical condition. The plaintiff admits she was on a diabetic diet and was suppose to drink milk instead of Kool-aid. (d/e 65). The fact that the plaintiff says she thought she needed the Kool-aid to control her blood sugars on that day is not relevant. The plaintiff admits in her deposition that if her blood sugar was low, eating her lunch would also have helped. (Def. Memo, Ex. A, Plaintiff Depo, p. 47). The plaintiff was not prevented from eating. In addition, she has presented no evidence that the defendants had any reason to believe she was in distress. In fact, the record shows the defendants took steps to ensure that her diabetes was under control by not allowing her to drink Kool- aid and checking the food she had purchased with the requirements of her diabetic diet. Finally, testing done on that day shows the plaintiff's blood sugar was not low. (Def. Memo, Ex. A, Plaintiff Depo, Ex. 3).

As for Defendant Burnett, the plaintiff does not claim she was denied her scheduled insulin and blood sugar checks, rather she claims Defendant Burnett did not take her to an additional, unscheduled check at noon. Burnett still checked with medical and was told that they would not see the plaintiff until the regularly scheduled visit. There is no evidence the plaintiff was in any medical distress or suffered any injury as a result of this delay.

The plaintiff's claims against Defendant Carter appear to be nothing more than an allegation that this defendant did not take the plaintiff back to the medical department as quickly as the plaintiff would have liked. The plaintiff has presented no medical records to support her claim that she was suppose to be taken back any sooner. Even if the court assumes that Defendant Carter did delay the plaintiff's next scheduled insulin shot, there is no evidence before the court that the short delay had a detrimental impact on the plaintiff's condition.

There is also no evidence before the court that any defendant deprived the plaintiff of her medications on any specific day. The plaintiff received on-going medical care during her time at Dwight Correctional Center with frequent trips to monitor her blood sugar levels. While the plaintiff states that she has suffered long-term injuries, there is not a scintilla of evidence before the court to support this allegation. (d/e 59, p. 3) To the contrary, the plaintiff admits in her deposition that her condition has actually improved. The plaintiff has not produced a single medical record to support any of her claims, and the motion for summary judgement on this claim is granted.

B. EXCESSIVE FORCE.

Defendant King claims the plaintiff has failed to demonstrate that she used excessive force against her. The plaintiff was unable to provide a month, day or time that this incident occurred. Her version of where it happened and who may have seen the incident changed during the discovery process. The plaintiff does not claim she asked for medical care and has presented no medical evidence of an assault. However, the court need not address the merits of this claim, because the plaintiff admits she did not file an Inmate Request Form. (Def. Memo, Ex. A, Plain. Depo, p. 83). The plaintiff says she had given up on writing grievances, but the plaintiff may not decide to ignore the grievance process. As the court has previously explained, the Seventh Circuit Court of Appeals has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002) If an inmate fails to follow the grievance procedure rules, her claims will not be considered to be exhausted, but instead forfeited, and she will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to her due to his procedural default. *Pozo,* 286 F.3d at 1025. The motion for summary judgement on this claim is granted.

C. LIVING CONDITIONS.

Defendants Kings and Closen argue that the plaintiff cannot demonstrate that the violated her constitutional rights based on her living conditions during a five day period at the Peoria County Jail. The plaintiffs must pass both an objective and a subjective test in order to establish that the conditions of their confinement violated the constitution. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The plaintiffs must first demonstrate that the alleged deprivations were "sufficiently serious." *Wilson*, 501 U.S. 298. Only conditions involving the denial of the "minimal civilized measure of life's necessities" rise to the level of a constitutional violation. *Rhodes*, 452 U.S. at 347. The plaintiff must also show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42).

"The Supreme Court has emphasized that 'no static test' can exist by which courts determine whether conditions of confinement are cruel and unusual." *DeMallory v. Cullen,* 855 F.2d 442, 445 (7th Cir. 1988) *citations omitted.* "In all cases, the determination as to whether prison conditions constitute cruel and unusual punishment turns on the totality of the circumstances." *Id.*

In her complaint, the plaintiff alleges that her short stay of less than 24 hours in the K pod cell and her four day stay in the detox cell violated her constitutional rights. The plaintiff alleged that the K pod cell was scorching hot, filthy and had spider webs all over. As for the

9

detox cell, the plaintiff alleged that the cell was disgusting with excrement spread about the area, a filthy sink and toilet, and the plaintiff says she was denied regular showers.

Again, the plaintiff has provided very little information in response to the pending summary judgement motions. The plaintiff claims that simply being placed in the K pod segregation cell for less than 24 hours to see if she was eating right is cruel and unusual punishment. [d/e 65, p. 1] The plaintiff is incorrect.

As for the detox cell, the plaintiff says she did not have round the clock access to nursing staff and the officers who checked on her every 15 minutes were not license medical professionals. [d/e 65, p. 2] The plaintiff has not demonstrated any injury or harm as a result, she is simply dissatisfied with the procedure. Again, this hardly qualifies as the kind of deprivation that violates the constitution. The plaintiff's only other claim in her response to the dispositive motion is a statement that her time in the two cells "worsened" her condition. [d/e 65, p. 1] Again, the plaintiff has presented no evidence whatsoever to support that claim.

Based only on the allegations in the complaint, it is doubtful that a trier of fact would find that the deprivations alleged in either cell were sufficiently serious. Nonetheless, even if the court assumes the plaintiff could demonstrate the first prong of the test, the plaintiff has present no evidence that either Defendant King or Defendant Closen were deliberately indifferent to her living conditions. Defendant Closen did not escort the plaintiff to either cell, nor is there any evidence before the court that this defendant had any reason to know of the conditions the plaintiff alleges. Defendant King did escort the plaintiff to both cells, but the plaintiff has not presented evidence that she complained about the conditions of either cell to King or that King was aware of her complaints. The motion for summary judgement is granted.

D. ATTORNEY PHONE CALLS.

Defendant King says the plaintiff has failed to demonstrate that she unconstitutionally interfered with the plaintiff's phone call with counsel. Pre-trial "detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Jackson v. Elrod,* 881 F.2d 441, 222 (7th Cir. 1989). However, unreasonable restrictions on prisoner's telephone access may violate the First and Fourteenth Amendments. *Tucker v Randall,* 948 f.2d 388, 391 (7th Cir. 1991). Nonetheless, prison officials may even tape an inmate's telephone conversations with an attorney "only if such taping does not substantially affect the prisoner's right to confer with counsel." *Tucker v. Randall,* 948 F.2d 388, 391 (1991).

There is no evidence before the court to support such a claim by the plaintiff. King simply monitored one call in accordance with jail procedures to make sure the call was placed to an attorney's office. By the plaintiff's own account, she only talked to the attorney's secretary, King was not in the room for the entire conversation and there is no evidence that the single incident "substantially affected" her ability to confer with counsel. The motion to dismiss this claim is granted.

E. VISITATION

Defendant King argues that the plaintiff cannot demonstrate that she violated the plaintiff's constitutional rights based on an allegation that she improperly denied the plaintiff's visitation. Pretrial detainees must be allowed reasonable visitation privileges. *Nicholson v. Choctaw County, Ala.,* 498 F. Supp. 295 (S.D. Ala. 1980). Nonetheless, restrictions of a pretrial detainee's visitation privileges are not unconstitutional unless they amount to punishment. *Inmates, Washington County Jail v. England*, 516 F. Supp. 132 (E.D. Tenn. 1980), *aff'd,* 659 F.2d 1081 (6th Cir. 1981).

The plaintiff makes two claims concerning visitation. First, the plaintiff claims Defendant King refused to allow a Women's Strength Counselor to visit her. There is absolutely no proof of this allegation before the court. The plaintiff did not witness the event and has based her claim on a card she says she received from the counselor. The plaintiff says she no longer has the card and has not produced any evidence from the counselor to support this allegation.

Second, the plaintiff alleges on one occasion that her visitation was cut short. The plaintiff does not allege she was denied visitation on this occasion, nor that she did not have other opportunities to meet with these individuals. The defendant says she does not have authority to cut a visit short. Even if the defendant had somehow cut this visit short by five minutes on one occasion, there is no evidence the action was punitive. This single incident does not rise to the level of a constitutional violation. The motion for summary judgement is granted.

**IT IS THEREFORE ORDERED that:**

1. **The defendants' motions for summary judgment are granted [d/e 53, 54, 55, 56]. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. This case is terminated, with the parties to bear their own costs.**

2. **If the plaintiff wishes to appeal this dismissal, she may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)©. If the plaintiff does choose to appeal, she will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).**

3. **The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are**

      available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.

4.      The plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of her obligation to pay the filing fee in full.  The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.

5      The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.

Entered this 16th day of December, 2009.

                                                    s/ Harold A. Baker

                                      _____
                                                    HAROLD A. BAKER
                                          UNITED STATES DISTRICT JUDGE